Good morning, Your Honors. My name is Roderick Walston. I represent the appellant in this matter, the City of Colton. And actually, there are two things before this Court. There's a direct appeal by the City of Colton, and then also there are two cross-appeals. And the parties have reached an agreement concerning how they would like to allocate the time for the appeal and the cross-appeal. And the agreement, of course, is subject to this Court's approval. The agreement is that the Colton appeal would be argued first, and each side would have 12 minutes to present their arguments. And then at the conclusion of that argument, the cross-appeals would be argued second, and each side would have 8 minutes to present their arguments on the cross-appeals. So then, according to my calculation, I think that totals 40 minutes, which is the amount of time allocated by the Court for this argument. And no rebuttal? Pardon me? And no rebuttal? I would like to reserve about 2 minutes of my time for rebuttal. We'll have to come out of the 20 on each side. Yes, that's right. All right. So according to the agreement, I would have 12 minutes to argue, and I would like to reserve 2 minutes of that time for rebuttal. So I would go for 10 minutes now, do a rebuttal afterwards, and then after that, the cross-appeals would be argued. All right. Very well. Counsel, we set the clock to 20 minutes, please. Actually, in this case, Colton is presenting two arguments to this Court. The first argument is that Colton has the right to seek declaratory relief for its future anticipated costs in cleaning up the hazardous because it did not comply with the National Contingency Plan. And the second argument is that we believe the district court erred in dismissing Colton's claim for past costs for the reason that, according to the Court, Colton was not responding to a public health threat because the percorate contamination at the site did not really amount to a public health threat. So those are the two arguments that we put before the Court. But before getting into those arguments, I'd like to raise a point. Does the second one really matter? Because it wouldn't change the judgment regarding those past costs. I'm sorry? You're saying that one of the two reasons that the Court gave for denying the past costs was there wasn't a public health threat. If the rest of the reasoning of the Court is sufficient to sustain its denial of those costs, what difference does it make? It would actually make a great deal of difference, Judge Kennedy, for several reasons. First of all, some of the defendants in this case have asserted a statute of limitations defense to Colton's new complaint, the complaint that has been filed by Colton afterwards that they did not assert and could not assert to Colton's initial complaint. I guess I don't understand. I mean, the past costs, you're not trying to recover the past costs anymore, are you? Not recovering the past costs. But the other answer to your question, Judge Canby, is that the if the defendants would have a potential defense to Colton's cleanup costs if, in fact, there was no public health threat. Because the doctrine of collateral estoppel would potentially preclude Colton from arguing that any costs that it incurs in this case are pursuant to a public health threat. Okay. That finding would be in your way, you think? Yes. We cannot recover costs, whether past, present, or future, under CERCLA unless we're able to establish that there was a public health threat. So if the trial court decision on that issue becomes final in this case, then we may be unable to recover any future or past costs against any of the defendants. Is that order with or without prejudice? The order by the district court? It was with prejudice. The Court dismissed Colton's claim for past costs not only because of the failure to comply with police contingency plans, but also because of the lack of a public health threat. That order is final. If it becomes final because this Court rejects our appeal, then the defendants have a potential collateral estoppel defense to that new argument. And before I present my argument on the two issues I presented to the Court, I would like to just bring to the Court's attention a recent trial court development. It doesn't really affect the issues before this Court, but nonetheless, I think the Court should be aware of them. After the district court dismissed Colton's appeal, Colton then filed a new complaint. And the effect of that complaint is actually before the Court. It's been discussed in the parties' briefs. But more recently, Colton then dismissed that second complaint without prejudice in order to engage in settlement discussions with the parties. Those settlement discussions went on for about two years. They finally broke down. So then Colton very recently, October 2009, filed a third complaint. Now, the third complaint is just virtually identical to the second complaint. So there's nothing new here. There's a difference in the amount of damages that is being sought in the third complaint, but otherwise the same legal issues that are before this Court based on the first and the second complaints, which have been fully briefed, are unaffected by the fact that there has been a third complaint filed in this case. But nonetheless, I felt that the Court should be aware of that development. Now, turning to the main issue on this appeal, our argument is that Colton's declaratory relief claim is ripe, even though Colton is not entitled to recover its past costs. Colton filed its declaratory relief claim pursuant to the Declaratory Judgment Act. And the Supreme Court and this Court have held on several occasions that a case is ripe under the declaratory relief claim is ripe under the Declaratory Judgment Act if there is an actual and immediate controversy between the parties, such as the issue is not hypothetical or abstract. We believe that the issue is actual and immediate in this case, and it's not at all hypothetical. The Colton's declaratory relief claim indicates that Colton intends to incur future costs cleaning up the basin. But the essential facts that would establish the defendant's liability have already taken place. There is nothing for the defendants to do in order to establish their liability. Their liability, such as it is, is based on acts that have already occurred and not occur in the future. All that remains, and actually Colton has now already begun cleaning up the basin, so all that really remains is to establish, is for the defendants, for us to determine whether the defendants are liable, and if so, the amount of damages. That's all that's left. So that's why this case is very actual and immediate and not at all hypothetical. Well, it may not be hypothetical. I guess maybe the question is whether under the statute you've stated a claim. I mean, if you're seeking a declaratory judgment that would govern further response costs or damages when you don't have any response costs or damages yet, I wonder if you have a claim. You may have a controversy between the parties. There's Article III jurisdiction. I'm just not sure. Well, we don't have a claim for costs. I'm talking about a claim for a declaratory judgment. But if we had the claim for costs, we would be seeking to recover past costs. The declaratory relief claim is for the anticipated future costs that we have yet to incur. Now, this Court actually, I think, answered the question that you just posed, Judge Kennedy. And the answer was found in the 1985 decision of this Court in the case of Wicklund Oil v. Sarko, which was written by Judge Wallace. And in that case, the Court held, this Court held that the plaintiff in that case, Wicklund, was entitled to seek declaratory relief pursuant to SERPA and under the Declaratory Judgment Act for its future response costs even though, even though the Court did not decide that Wicklund had the right to recover its past response costs. The Court did not decide whether Wicklund had the right to recover its past costs, but it said that Wicklund had the right to seek declaratory relief for its future costs because it had stated an actionable case in controversy under the Declaratory Judgment Act. In fact, the Court said specifically a case is ripe under the Declaratory Judgment Act where the essential facts establishing the right to declaratory relief have already occurred. The essential fact establishing Wicklund's right to declaratory relief, the alleged disposal of hazardous substances, has already occurred. We have exactly the same situation here. The essential facts establishing the defendant's liability have already occurred because the pertinent contamination of the groundwater has already occurred. So this case is on all fours, we think, with the Court's decision in Wicklund. Now, the defendants have made the argument that Wicklund is distinguishable because, they say, the Court determined in that case that Wicklund actually had the right to recover its past response costs. But that argument is incorrect because the Court didn't decide that. The Court instead said that the district court erred in dismissing the plaintiff's claim that Wicklund had not obtained that case for the reason that the federal government had not approved the claim. And that's all the Court did. The district court below had thrown out the claim on Rule 12b-6 grounds, failure to state a claim on which relief can be granted. And the appellate court said, no, they have stated a claim on which relief can be granted, and now it's back to the district court to decide whether they actually have the right to recover their response costs or not. Turning to the second issue, we believe that the district court erred in dismissing Colton's past cause complaint because, in the Court's view, there was no public health threat because per cura in groundwater does not pose a public health threat. Now, we offered substantial evidence in support of our position that there was a public health threat, and the district court, nonetheless, granted summary judgment for the defendants. But we think there's a genuine dispute of material fact on that issue based on the evidence that we submitted to the district court, and, therefore, the Court should not have properly and could not have properly granted summary judgment. According to the evidence we offered before the Court, the California EPA had adopted a public health goal of six parts per billion of per cura in drinking water. And the Department of Health Services then proposed to adopt a maximum contaminant level at the same level, six parts per billion. Then after that, in 2007, the State of California, through the Cal EPA, actually Now, the per cura in Colton's drinking water supplies exceeded those amounts on several occasions, and, therefore, the evidence shows a public health threat. And on top of all that, we submitted a declaration by an expert toxicologist who said specifically that, in his opinion, the per cura in the groundwater in Colton's drinking water basins posed a threat to the public health care. He specifically said that. And the district court disregarded his declaration because it said he had not consulted with Colton before or Colton had not consulted with him before Colton actually initiated its cleanup operation. Our view is that the Court should not have rejected that declaration, but instead should have considered it. Because, in our view, it is entirely appropriate to develop evidence after cleanup starts to demonstrate that a public health threat actually existed at the time that the cleanup operation did start. Cal, sir, you've consumed 12 minutes so far. Oh, I have? Yes. Oh, I'm sorry. Okay. Well, then I'd better reserve my time. Thank you, Your Honor. If I have any time. No, you have eight minutes for your side remaining. I'm sorry. I don't want to take away time from any of the other parties, but I thought I was being given a total of 12 minutes with two reserved. Okay. Yes, but you went on that. Yes. All right. Very well. Very well. Good morning, Your Honors. My name is James Weider, and I've been asked to argue on behalf of all Apple Lease this morning in opposition to the Colton Appeal. My clients are Black & Decker, Inc., MR Industries, Inc., and Kwikset Locks, Inc. I have three points I want to discuss with the Court this morning, and I want to answer Judge Canby's question that he first posed to counsel. First, I want to discuss the special, if not unique, rules governing declaratory judgments under CERCLA as set forth in 96-113-G2, Title 42. Secondly, I want to discuss the District Court's proper application of that rule in this brief. Lastly, I want to discuss how the City of Colton's concession in this appeal, as it said in its opening remarks that it failed to comply with the NCP with regard to its well-had treatment clauses, compels this Court to enter judgment affirming the decision below in the Colton case. Let me begin, if I can, with 113-G2. And if the Court is looking for a reference to that, it's in Apple Lease brief at page 36 is the text of 113-G2. And particularly, I want to direct the Court's attention to the middle paragraph, or really the last paragraph, which focuses on the deck relief provisions under CERCLA. And 113-G2 says, and I quote, In any such action described in this subsection, the Court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. This declaratory judgment rule and right in a CERCLA case involves, and I want to go back to it, only declaratory judgment in actions described in this subsection. If you go to the very beginning of 113-G2, you will find the Court saying, the statute says, an initial action for recovery of cost referred to in section 9607 of this title must be commenced. And in other words, deck relief as a remedy for further costs is proper where there's an initial action for response costs. This Court and all three judges sitting on the panel today have held in earlier cases that under section 9607A4B, CERCLA permits actions for response costs incurred not to be incurred. Judge Goodwin so wrote in Henry, Dont, and Russell in 1991 at 951 fed 2nd at 249. Judge Candy so wrote in Levin-Meadows in 1986 at 799 fed 2nd, 13, 15, and 16. And Judge O'Scallon so wrote most recently in Carson Harbor at 433 fed 3rd at 1265. So this panel in the Ninth Circuit has uniformly held that a 107 action can only be brought and is properly before a court for costs incurred. And more importantly, the Ninth Circuit is uniformed in this rule as well with regard to costs incurred in order for a plaintiff to establish a prima facie case under section 9607A. That plaintiff must show, and I'm quoting here Carson Harbor and Judge O'Scanlon, must show, and I quote, that the release has caused plaintiff to incur response costs that were necessary and consistent with the NCP. Levin-Meadows, as Judge Candy so wrote, stands for the same proposition at 13, 15, and 13, 16. In 1989 in Ascon Properties in the Ninth Circuit, the court made it clear that the requirement of having incurred cognizable response costs is necessary to assist the plaintiff to assist his court or assist the trial courts in a proper processing of section 107 claims. There are lots of claims for costs under CERCLA that clearly aren't response costs and clearly aren't recoverable. In order to have a real right case in controversy with regard to the response cost at issue, it is imperative, and this is what the Ascon Properties case held at 866 fed 2nd at 1154, it is imperative that there actually be response costs that have been incurred. That's especially true in multi-party cases where there are multiple defendants and it is the case that some response costs may be attributable to actions of certain defendants and not others. It is important then to understand that uniformly throughout the Ninth Circuit's cases that I've mentioned, and this is quoting Ascon Properties again, if a plaintiff ultimately fails to show a proper response cost, then he will fail to prove his prima facie case. That's at 1154 of Ascon Properties. The importance of that failure, if the plaintiff has failed to prove his initial action for response costs, the Debt Relief Act judgment or ruling is a remedy that shall be entered in such cases necessarily shall be entered in the defendant's favor, not the plaintiff's or not left over for some future action or future claim by the plaintiff. Let's now see what Judge Walter did with regard to these rules in the decision below. Judge Walter found that Colton failed to carry its burden and proved its prima facie case under Section 9607A with regard to its wellhead treatment program, i.e., the costs incurred in connection with the construction of a treatment facility for three wells and those future costs. The Court made it crystal clear that Colton had failed to incur these costs, that failed to prove its case because it failed to comply with the NCP. And there's a series of requirements that were listed in the Court's decision that talk about all of the failures. Counsel has admitted that failure. Having so found with regard to the wellhead treatment costs that are, as alleged, in the first and second causes of action under CERCLA, the district court granted defendant's motion for summary judgment and entered judgment in favor on the city's incurred costs for its wellhead treatment program. That's the first and second causes of action, the second sentence in the judgment in this case, the second paragraph in the judgment in this case. And most importantly, the district court did not dismiss the future claim for costs for wellhead treatment, but rather entered judgment in favor of the defendants. Specifically, on the city's claim for future or further costs for its wellhead treatment program, Judge Walter entered a judgment as mandated by 113G2 in favor of defendants. And you'll look at, you'll see it, it's footnote 16 of page 10 of the Court's decision at the appellate's record 119, and it's the judgment, paragraph 2, page 125 of the appellant's record. Indeed, given the facts and the concession that the city has made here on appeal, the district court had no other course of action with regard to declaratory judgment relief. The wellhead treatment program which was being prosecuted had failed to comply with the NCP, and as the Court, which can be noted, Judge Walter found three reasons, independent reasons, for denying the claim. Two, under the NCP, and the third, because he found it wasn't a removal action, because it wasn't necessary and it didn't involve an immediate threat to the environment. Colton's position on appeal here, lastly. Colton's concession to this Court that it failed to comply with the NCP compels this Court to affirm the judgment below for this reason. As Judge Canby pointed out in his question, there were three independent reasons in the decision as to why Colton's claims for wellhead treatment costs were improper. Colton here on appeal concedes it failed to comply with the NCP, the first two reasons, and seeks to argue now that somehow because their cost may be necessary, and there was a declaration from an expert after the fact that said it posed a threat to public health, that that somehow creates a material issue of fact. It doesn't create a material issue of fact with regard to the changing of this decision below because of the two independent reasons. And my point is this. There are lots of costs, as I said, that are necessary and necessary to address immediate threats to the environment, but unless the plaintiff complies with the NCP, he can't recover those costs ever. Finally, I want to make it clear that with regard to the ---- Your point about the declaratory judgment, of course, the plaintiffs asked for a declaration of liability, and that was denied. I mean ---- Your Honor, they asked for a declaration of liability, and they got it. What they got was from Judge Walter under 113G2 was a declaration that defendants were not liable for further response costs associated with the wellhead treatment program that they had instituted because they had fundamentally failed to prove that any of the costs incurred complied with the NCP. It's important, and I appreciate counsel's concession earlier today about the change of the pleadings, but with regard to the allegations and the assertions and the briefs about future basin-wide cleanup costs, Judge Walter did not dismiss those with prejudice. He simply said those claims are not right for adjudication in my courtroom on this complaint because those costs were incurred only after this lawsuit was filed. And because you hadn't had any costs that you incurred with regard to the basin-wide cleanup program, those costs are not actionable. You're free to bring those claims some other day. Is there any overlap between the wellhead cleanup and the future basin-wide? Your answer to that is twofold. One, plaintiffs also conceded, as Judge Walter noted in his decision, that the wellhead treatment costs were not a remedial action. They were a removal action, i.e., an action that required immediate attention. The basin-wide cleanup plan is a remedial action by any measure and standard. Colton did bring a lawsuit immediately after the dismissal of its case before Judge Walter, what we call Colton III, in federal court seeking just future basin-wide cleanup costs. What counsel failed to mention today is that the October 2009 lawsuit, in that lawsuit Colton has abandoned that claim. It no longer pursues, and I think that's my signal, it no longer pursues a claim for future basin-wide cleanup costs. That controversy with Colton is no longer alive. Counsel, you're down to about six and a half minutes left. Your Honor. If you want to go to the cross-claim. I'm going to reserve that six and a half minutes to deal with the cross-appeal. If you want to go to the cross-appeal, you may do so at this time. Counsel. In response to Judge Canby's question, yes, there is an overlap between the cleanup of the basin and the cleanup of the wells by Colton. Colton basically, in cleaning up the basin, is cleaning up the wells because the wells are the part of the basin that apply to Colton. So Colton's past and future costs, whether allocated to the wells or the basin, are really the same related to cleanup of the same resource because it is cleaning up the basin, the wells as part of cleaning up the basin. Second, counsel has emphasized the importance of Section 113g2 of SERPA in this case, which imposes, requires the Court to impose a mandatory injunction, a declaratory relief judgment in certain cases. But it's very important to keep in mind that, first of all, we think that 113g2 does authorize the declaratory relief claim in this case. But secondly, Colton's complaint in this case for declaratory relief was actually brought not under the SERPA 113g2 provision, but was rather brought under the Declaratory Judgment Act. And it was the Declaratory Judgment Act that this Court in the Whitland Oil case that I mentioned earlier relied upon in holding that a party can assert a claim to future cleanup costs under the Declaratory Judgment Act, even though the Court did not decide whether that party had the right to recover its past costs. Counsel also mentioned this Court's decision in Daughton-Russell, where the Court said that you can recover your future cleanup costs under, by way of declaratory relief under 113g2 only if you have, quote, incurred, incurred past costs. Well, as we pointed out on a brief, Colton did incur past costs in cleaning up the basin. What happened was Colton spent millions of dollars in past costs in cleaning up the basin. It turns out we can't recover those costs because we didn't comply with the NCP. So the question then is, when a party has incurred past costs but doesn't have the right to recover them, then can the party under those circumstances seek declaratory relief for its future costs? And that's the question we've put before this Court. Nothing in Daughton-Russell says that you actually have to recover those past costs before you have the right to assert a declaratory relief claim for future costs. But Wickland Oil, on the other hand, did address that question because there the Court did not decide whether you had the right to recover past costs, and the Court nonetheless held that the party did have the right to recover or to seek declaratory relief for its future costs. And finally, the counsel has emphasized that we have made a concession which that we don't have the right to recover past costs, which he says means that we have no right to recover or to even seek declaratory relief for future costs. And I would emphasize to the Court that there is no logical nexus between the right to recover past costs under CERCLA and to seek the right to recover or to sue for declaratory relief for future costs under CERCLA, because a party can be fully noncompliant with the NCP and its past cost recovery effort and still comply with the NCP in the future with respect to its future costs. So there's no nexus between the fact that we did not comply with the national contingency plan and our past costs and our ability to comply with the NCP in trying to recover the future, the future costs. And so I'll, that's all my time. Thank you very much, Your Honor. Good morning. May it please the Court. My name is Jeffrey Dinser, and I'm here on behalf of Cross Appellant Goodrich Corporation. It has long been a principle of Federal jurisprudence that when an act of Congress  is brought to a jurisdiction upon a district court, that that court may not simply refuse to hear a claim. But that is exactly what happened in this case with respect to the Section 107A claims that were brought as cross claims, counter claims, and deemed claims pursuant to the case management order Judge Waltz approved, referred to as case management  I don't know if it was refusal of jurisdiction, or if it was there, then a mistake as to whether your claims were really contribution claims only. It, at the end of the day, that's really what it boils down to. The fact is, is that Judge Walter, throughout all the 107A claims, generally relying upon the principle in Pinal Creek that they were contribution claims tied with Section 113. And to his defense, he did not have, of course, the benefit at the time that that order was issued of the Supreme Court's unanimous thinking in the Atlantic Research decision, which makes it quite clear that they are independent. Section 107A claims are for cost recovery, not for contribution. There is no doubt that our complaint, that is, our cross complaint and our counter 107A claims, but you don't have to quibble about Rule 8 pleading here. I mean, the reality of it is, is that a CMO, CMO 2, that was filed on March 3, 2006, and is part, of course, of this Court's record, at the very conclusion, specifically states that the parties, and it says here, this is on page 13 of the order, quote, each defendant, but no cross defendant, is deemed to assert cross claims under surplus Section 107A for response costs, contribution, and declaratory relief as applicable as against each separately represented defendant. By way of background, just so the Court knows, after Goodrich Corporation filed cross claims and a counter claim under Section 107, the other defendants, exclusive of the United States, which did not participate in this particular provision, decided that they wanted to also assert their 107A claims, because there was some question, now, that had been raised in the Atlantic Research decision, and pending before the United States Supreme Court has to think back whether there was an independent right of action under Section 107. And so instead of everybody filing 107 claims, it was just worked out by all of the defendants and the plaintiff, again, exclusive of the United States, that all the parties would independently assert 107A claims. The District Court, when it threw out Colton's lawsuit on summary judgment filed by the defendants, without notice or a hearing, also threw out our Section 107A claims. And I submit, in light of Atlantic Research, the Court did that in what this Court, we believe, should do, as it has done in several other cases following the Atlantic Research decision, most notably, for example, the Rialto case, which is related to this matter, needs to remand the case back to the District Court with instructions that the 107A claims are to be brought to proper resolution, not simply dismissed summarily. We've explained in our papers we have a concern that, in particular, the way it was done here, again, without notice or a hearing, and the way the order reads and the judgment reads, that, of course, the claims that were dismissed, according to Rule 41, were dismissed with prejudice. And so that is obviously of concern to us, because we obviously never had an adjudication of those claims on the merits. And unless the Court has any questions with respect to this cross-appeal, I will submit on this matter. Thank you very much. Please, the Court. My name is Brian Zagon. I'm here for Pirate Spectaculars, Inc. We will join you. Your entire side has only one, just two minutes left. You're aware of that? Yes, Your Honor. It will be 30 seconds. Unless the Court has any questions for Pirate Spectaculars, we're prepared to submit as well. Very well. Thank you. Thank you, Counsel. Your Honor, James Meeder. I'm going to submit on the issues raised in the cross-appeal. Our brief is clear on that issue. I want to, in my time left, address two issues raised by the Colton appeal. Number one, and I forgot to mention, the City's reliance on Wickland Oil is misplaced for a fundamental reason. Wickland Oil was decided on June 20, 1986. 113G2, the declaratory relief provision under CERPA, was enacted on October 17, 1986, after the Wickland Oil case. Wickland Oil does not discuss or apply the special rules which I think are unique under 113G for CERPA purposes for declaratory relief. And lastly, with regard to the evidence of health risk put into the record, it's undisputed, as Judge Walter's decision makes clear, that that evidence was post hoc decisions with regard to the water treatment program of the City of Colton. And in our brief, we cite two cases. One case that discusses two circuit decisions that make it crystal clear that with regard to, it says, for response caused to be necessary, plaintiff must establish that an actual or real public health threat exists prior to initiating a response action. Undisputed, that didn't happen here. So the evidence that the City put in with regard to their expert declaration of potential health risk is simply inadmissible and improper and not supportive of their claim. And that's at the regional airport decision at 460 Fed 3rd at 704, and it cites a Seventh Circuit case at that page as well. Well, would that have any future effect outside of this particular claim for, which has been abandoned for past costs? Your Honor, the trial court's decision with regard to deck relief on the wellhead treatment costs that the City of Colton sought was based on the failure to comply with the NCP. That failure cannot be cured with regard to the wellhead treatment program of the City of Colton as a removal action. The City of Colton has conceded in the trial court in here that it was never intended to be a remedial action. So the court, the district court, properly addressed the issue with regard to both past and future wellhead treatment costs on the record. And remember, there were two additional reasons independent of the health risk on which the court was concerned. But it's a recovery. I mean, it's – would that finding have any effect in a future remedial action? That's for the district court who might have that future remedial action to decide. But the judge's decision in this case should stand as it is because the claim for past cost and future cost for wellhead treatment failed as the petitioner, as the appellant here concedes, because it failed to comply with the NCP. I understand. Thank you, counsel. Mr. Alston, your side has four minutes left. Okay. To respond to Judge Canby's question, would the decision apply to future remedial costs, the court should understand that Colton's future costs may be either removal or remedial. We haven't sorted that out yet. In fact, we're not sure that we have yet met the standards for remedial action with respect to our future costs. So we're not entirely clear whether those future costs will be removal or remedial. And to the extent that they're removal, they would be – Colton would be barred by collateral stop or potentially from asserting the claim to those costs because Judge Walters did hold that the removal costs could not be sought by Colton. And the court, this Court in past cases, has held, especially in the W.R. Gray's case that was cited in our briefs, that there is – there's almost no seam between a removal and a remedial action. The court said specifically that the triggering elements of both are, quote, virtually similar and that there's an overlap between the sections. That's why – that's why collateral stop would potentially bar our future claim, whether our future claim is removal or remedial. Secondly, counsel also mentioned that Wicklund – this Court's decision in Wicklund was decided before the Congress adopted section 113g2 of CERTA. Section 113g2 may have just special application because it's a mandatory injunction. The court – the Congress said in passing 113g2 that – that the court shall – shall – shall issue a declaratory judgment under certain circumstances and then define the circumstances. So I'm not quite sure, quite frankly, what Congress had in mind, what precise circumstances Congress had in mind that triggers this mandatory injunction. But our view is that Congress, in adopting 113g2, did not preempt or limit the otherwise obvious effect of the Declaratory Judgment Act. And it was the Declaratory Judgment Act that this Court in Wicklund interpreted and applied in upholding the future – the claim for declaratory relief or future costs in that case. So our view is that Wicklund is still good law because it was based on the Declaratory Relief under the Declaratory Judgment Act as interpreted and applied in Wicklund. Thank you. Thank you, counsel. The case just argued will be submitted for decision and the court will adjourn.
judges: Goodwin, Canby, O'Scannlain